## HANS LUNDGREN *v.* TOWN OF STRATFORD
## (4965)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 4—decision released August 25, 1987

*Gerald F. Stevens,* for the appellant-appellee (plaintiff).

*Anthony M. Guerrera,* for the appellee-appellant (defendant).

DUPONT, C. J. The plaintiff appeals and the defendant cross appeals from the trial court's order for execution of the award made to the plaintiff by the

workers' compensation commissioner under General Statutes § 7-433c, which provides for disability and retirement benefits to members of police or fire departments who have heart disease or hypertension.[1] The principal issue of this appeal involves a determination of the limitation imposed by General Statutes § 7-433b (b) upon the payment of such benefits. That statute provides in relevant part that "the cumulative payments . . . for compensation and retirement . . . benefits under section 7-433c shall be adjusted so that the total of such cumulative payments received by such member . . . shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, *to members of such department in the same position which was held by such member at the time of his death or retirement.*" (Emphasis added.)

The parties disagree as to the interpretation of the words "same position" as used in the statute. The plaintiff asserts that the phrase refers to the same pay grade *and* pay step as that which he had attained at the time

---

[1] General Statutes § 7-433c provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute . . . to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents . . . shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents . . . shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment."

of his disability. He claims, therefore, that the proper measure of the statutory ceiling imposed by § 7-433b (b) is the amount of compensation being paid to a member of his department who is at that same pay step.[2] The defendant claims, on the other hand, that the phrase "same position" merely refers to the same job title encompassing the same duties and responsibilities. It claims that the proper measure of the limitation imposed by the statute is the amount of compensation being paid to the recipient's successor, regardless of that successor's pay step.

The parties stipulated to the following relevant facts. The plaintiff was the fire chief of the town of Stratford for forty-two years, and at the time of his retirement on April 1, 1984, earned a weekly salary of $806.59. At that time, he was granted a "Disability in the Line of Duty Pension" from the town due to heart disease, in the amount of $755 per week. Shortly thereafter, the plaintiff also sought disability benefits for heart disease under § 7-433c.

On April 1, 1984, a successor with less seniority than the plaintiff was appointed as acting fire chief at a lower pay step and weekly salary than that of the plaintiff's, in the amount of $669.59. On October 29, 1984, the successor was appointed as fire chief at the weekly salary of $695.32. The weekly salary of the plaintiff's successor was subsequently increased to $758.01 on April 1, 1985, and reached $786.95 by April 29, 1985.

On January 21, 1985, the workers' compensation commissioner issued a finding and award in the plaintiff's favor for heart disease and hypertension bene-

---

[2] At the time of his retirement, the plaintiff was being compensated at pay grade 28, step 6. His successor had attained pay grade 28, step 1, at the time of his appointment. The parties have stipulated to the fact that on April 1, 1985, the weekly salary for a person in pay grade 28, step 6, was $856.92. Pay steps are based on longevity.

fits pursuant to § 7-433c. The commissioner awarded the plaintiff "468 weeks of compensation for 60% permanent partial impairment of the cardiovascular system at the rate of $326.00 per week commencing on July 1, 1984, date of maximum improvement. Subject to the lawful limitations of Section 7-433b." The defendant thereafter failed to make any payments of the commissioner's award to the plaintiff because the plaintiff's successor's salary during all relevant times was exceeded by the amount of the plaintiff's pension alone. Under the defendant's interpretation of § 7-433b (b), no workers' compensation benefits were due to the plaintiff.

The plaintiff filed a motion for execution of the award in the trial court pursuant to General Statutes § 31-300.[3] In his motion, he claimed that the sum of $4953.13 was due from the defendant for the period of July 1, 1984, to November 10, 1985. The trial court found that under a "plain reading" of § 7-433b (b), the cumulative payments of retirement and disability benefits could not exceed the amount of the weekly compensation being paid to the plaintiff's successor. It concluded, therefore, that payments under the award were prohibited until the weekly compensation for the plaintiff's successor had reached $755, or the amount of the plaintiff's pension. The trial court accordingly ordered execution of the award in the amount of $998.24,[4] and found that "[u]nder the statute, such increments would continue to be adjusted as [the successor's] compensation increases."

[3] General Statutes § 31-300 provides in pertinent part: "The court may issue execution upon any uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the superior court; and, upon the filing of an application to the court for an execution, the commissioner . . . shall, upon request of the clerk of said court, send to him a certified copy of such award."

[4] In reaching this amount, the trial court found that from April 1, 1985, to November 10, 1985, the plaintiff was entitled to an award for four weeks at the rate of $3.01 and 28 weeks at the rate of $31.65.

Both parties challenge the trial court's interpretation of § 7-433b (b). Although the parties agree that this statute imposes a limitation on the payments that may be received under § 7-433c, they disagree as to the measure of that limitation. The precise issue presented in this case has not been decided by this or any other Connecticut court. In determining the meaning of the statute, however, we are guided by well defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature. *Rhodes* v. *Hartford*, 201 Conn. 89, 93, 513 A.2d 124 (1986); *Norwich* v. *Silverberg*, 200 Conn. 367, 370–71, 511 A.2d 336 (1986); *State* v. *Kozlowski*, 199 Conn. 667, 673, 509 A.2d 20 (1986); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.05. Where the language used to express the legislative intent is clear and unambiguous, there is no need to look beyond the words used in the statute. *State* v. *Blasko*, 202 Conn. 541, 553, 522 A.2d 753 (1987); *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 57, 392 A.2d 491 (1978). When a statute is ambiguous, however, we turn for interpretive guidance to its legislative history, the circumstances surrounding its enactment, and the purpose of the statute. *State* v. *Blasko,* supra; *Rhodes* v. *Hartford,* supra. We find that the words "same position" as used in § 7-433b (b) are ambiguous, and we therefore apply the general rules of statutory construction and look beyond the statute to ascertain the intent of the legislature.

Section 7-433b (b) is but one part of a comprehensive legislative scheme directed at the compensation of members of fire and police departments who die or are disabled as a result of heart disease or hypertension. In order to ascertain and effectuate the legislative intent of § 7-433b (b), therefore, it is necessary that we be mindful of the purpose and background of § 7-433c.[5]

[5] The provisions of General Statutes § 7-433c have had a long and "rather tumultuous history." *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664,

Section 7-433c in its present form was enacted in 1971 as a means of recognizing the unusual health risks associated with members of paid fire and police departments.[6] It gives qualified members an "outright bonus"

667, 425 A.2d 131 (1979). In 1951, the legislature enacted a statute which provided that any impairment of health caused by hypertension or heart disease resulting in the total or partial disability of a uniformed member of a paid municipal fire department who successfully passed a physical examination on entry into such service shall be presumed to have been suffered in the line of duty. General Statutes (Sup. 1951) § 175b. This statute, which afforded a rebuttable presumption to such firemen, was subsequently made applicable to regular paid municipal policemen. It was subsequently repealed and reenacted in 1961 as General Statutes § 7-433a; Public Acts 1961, No. 330, §§ 1, 2. It was further amended by the legislature in 1967 to clarify that the statute applied whether the condition occurred while the policeman or fireman was on or off duty at the time of the disability. Public Acts 1967, No. 770, § 1. In 1969, the legislature again amended the statute by making the state retirement system applicable to this section and by substituting a conclusive presumption that the hypertension or heart disease arose out of and in the course of the member's employment. Public Acts 1969, No. 380, § 1.

In *Ducharme* v. *Putnam,* 161 Conn. 135, 285 A.2d 318 (1971), our Supreme Court held that the conclusive presumption provided in General Statutes § 7-433c was in contravention of the due process clauses of both the state and federal constitutions. Public Acts 1971, No. 524, was enacted in response to the court's suggestion that this legislation might be constitutionally perfected by "legislation requiring municipalities to provide special compensation or a bonus for policemen and firemen or supplemental or special risk insurance in the case of such occupations." *Ducharme* v. *Putnam,* supra, 144. The validity of § 7-433c in its present form was sustained upon a subsequent constitutional challenge in *Grover* v. *Manchester,* 168 Conn. 84, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975).

[6] The provisions of General Statutes § 7-433c state that the statute was enacted for the following reasons: "In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation . . . ."

or "special compensation" by specifically requiring the payment of benefits to those members who have heart disease or hypertension without requiring them to show that such conditions were work related.[7] See *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 668, 425 A.2d 131 (1979).

Under the provisions of § 7-433c, qualifying members are entitled to receive (1) a retirement allowance from the municipal or state retirement system in an amount equal to what they would receive for a disability that arose out of and in the course of employment, and (2) compensation and medical care from the municipal employer in the same amount and in the same manner as provided for under the workers' compensation law.

As a result of this legislation, and until the passage of § 7-433b (b), many members of police and fire departments were able to receive payments of both retirement and heart disease or hypertension compensation benefits which exceeded the amount of income that they could have earned if they had continued working. 20 H.R. Proc., Pt. 5, 1977 Sess., p. 1817; 20 H.R. Proc., Pt. 14, 1977 Sess., p. 6049. Section 7-433b (b) was enacted in response to this unanticipated and unintended situation. Its purpose was to provide a "statutory ceiling" or cap on the amount of payments that could be received by a claimant. See *Maciejewski* v. *West Hartford,* 194 Conn. 139, 146–47 n.4, 480 A.2d

[7] Our Supreme Court has recognized that General Statutes § 7-433c "specifically requires the payment of compensation to firemen and policemen who have successfully passed a physical examination which failed to reveal any evidence of hypertension or heart disease and who subsequently die or are disabled as a result of such conditions. It casts no burden of proof upon the claimant to show that such disease resulted from the employee's occupation or that it occurred in the line and scope of his employment. The mere fact that a fireman or policeman has hypertension or heart disease and dies or is disabled as a result thereof qualifies him or his dependents for benefits under this section." *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 670, 425 A.2d 131 (1979).

519 (1984); *Pyne* v. *New Haven,* 177 Conn. 456, 463–64, 418 A.2d 899 (1979); *Middletown* v. *Local 1073,* 1 Conn. App. 58, 63, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). That ceiling is set at the weekly compensation being paid "to members of such department in the same position which was held by such member at the time of his death or retirement." General Statutes § 7-433b (b).

In interpreting the language used by the legislature in imposing this statutory ceiling, we first look for the intention of the legislative body " ' "as found from the words employed to make it manifest." ' " *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 221, 348 A.2d 560 (1974). A statutory term is to be given, when possible, the meaning it has "according to the commonly approved usage of the language." General Statutes § 1-1 (a); *Doe* v. *Institute of Living, Inc.,* supra, 57. We therefore usually construe words and phrases according to their plain and ordinary meaning. *Sawyer Savings Bank* v. *American Trading Co.,* 176 Conn. 185, 189, 405 A.2d 635 (1978).

The ordinary meaning of the word "same" is "resembling in every relevant respect; identical; corresponding so closely as to be indistinguishable." Webster, Ninth New Collegiate Dictionary (1983). The word "position" is defined as "official rank or status" or "an employment for which one has been hired; job." Id. The phrase "same position," therefore, commonly refers to a position or rank which is identical in *all* respects. We thus interpret the measure of the limitation imposed by § 7-433b (b) to be the amount of compensation being paid to a member in a position and rank which is identical in all respects, including pay grade and pay step, to that which was attained by the plaintiff at the time of his retirement. The statutory ceiling on the benefits that can be received, therefore, is the amount of

compensation equal to that which the plaintiff would have received if he had continued working.

In reaching this conclusion, we note that the legislature, by choosing to use the word "same" as a modifier, intended that the word be given effect. No word or phrase contained in a statute should be treated as superfluous or insignificant, as " 'there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment.' " *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 355–56, 402 A.2d.332 (1978); *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 129–30, 394 A.2d 731 (1978); *Doe* v. *Institute of Living, Inc.,* supra, 58. The legislature could have either eliminated the modifying word "same" or used the phrase "similar position" or "comparable position" in its place. See, e.g., General Statutes § 31-308 (a). We must effectuate, therefore, the intent of the legislature as manifested in its explicit use of the word "same."

The defendant claims, however, that the phrase "position" merely refers to job title, and that the statutory limitation imposed by § 7-433b (b) is governed by the amount being paid to the plaintiff's successor with the same job title. We note that a term which, in isolation, appears to be clear, may nevertheless be rendered ambiguous by the context in which it is used. *Doe* v. *Institute of Living, Inc.,* supra, 57. The word "position," as used in the statute, is susceptible to varying definitions. Confronted with this ambiguity, we must apply the general rules of statutory construction in order to determine the legislature's intent. See *State* v. *Blasko,* supra. Foremost among these is the principle that "[t]he law favors rational and sensible statutory construction. . . . 'When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results.' *Muller* v. *Town Plan & Zoning*

*Commission,* 145 Conn. 325, 331, 142 A.2d 524 (1958) . . . ." *Maciejewski* v. *West Hartford,* supra, 151–52; see also 2A J. Sutherland, Statutory Construction (4th Ed.) § 45.12.

The defendant's interpretation of the statute would lead to the anomalous result of having the amount of a recipient's award tied to the fortuitous setting of a successor's salary. Usually, a successor would have less seniority than the retiring recipient. Moreover, it is possible that the recipient's position could be either eliminated or left vacant for a long period of time. Likewise, a position could be filled with more than one person, and such persons could have varying steps of pay. In these situations, the measure of the limitation imposed by the defendant's reading of § 7-433b (b) would be difficult, if not impossible, to determine, and the results would inevitably be inconsistent and unfair.

Our interpretation of the statute, which focuses on the amount of compensation that the *recipient* would have received if he continued working, can be uniformly and consistently administered in all situations without difficulty. Such an interpretation of § 7-433b (b), therefore, is a reasonable and logical one under the circumstances of this case. It is also consistent with other compensatory schemes conferring benefits similar to those awarded to the plaintiff. Both the Workers' Compensation Act and the Municipal Employees Act, for example, contain certain provisions which compute the amount of benefits to be paid by referring to the wages received by the particular employee seeking such benefits. See, e.g., General Statutes §§ 7-432, 31-308, 31-310. In *Pyne* v. *New Haven,* supra, 463, our Supreme Court, while not specifically addressing the precise issue presented here, assumed sub silentio that the limitation of § 7-433b was measured by the amount of compensation being paid to the employee, and not by the amount of compensation being paid to his successor.

The legislative purpose and history of the heart disease and hypertension statutory scheme also supports our interpretation. "[I]t is to be presumed that the legislature, in enacting a law, 'did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law.' " *Doe* v. *Institute of Living, Inc.,* supra, 58, quoting *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66 (1971). The purpose of § 7-433c was to confer benefits to firemen or policemen so that such members would be protected "against economic loss resulting from disability or death caused by hypertension or heart disease." See *Middletown* v. *Local 1073,* supra, 65. Section 7-433b (b) was *not* enacted to contravene that general purpose. Rather, the purpose of the limitation imposed by § 7-433b (b) was " 'to make the employee good as to the extent of [100 percent of] the earnings of which he has been deprived by [his disability].' " *Emerick* v. *Monaco & Sons Motor Sales, Inc.,* 145 Conn. 101, 104, 139 A.2d 156 (1958).

Finally, we conclude that our interpretation is also equitable, because it ensures that a claimant with considerable seniority will not be prevented from obtaining maximum benefits in the likely event that a successor with less seniority is appointed to replace him. In the present case, the plaintiff worked for the defendant for forty-two years. He should not be penalized by the imposition of a statutory cap on benefits received under § 7-433c based upon the compensation being paid to a successor with far less seniority.

In reaching this conclusion, it should be emphasized that our holding in this case does not conflict with our holding in *Middletown* v. *Local 1073,* supra. In that case we held, when construing a municipal ordinance with the provisions of § 7-433c, that a municipality could deduct payments received by a claimant under workers' compensation for heart disease or hypertension

from the amount of a pension awarded to the claimant for the same condition. See also *Maciejewski* v. *West Hartford,* supra. Such setoff or deduction of payments was permitted because of our finding in that case that "[t]he intent of the legislation is to place qualifying firemen and policemen who die or are disabled as the result of hypertension or heart disease in the same compensation position as those who die or are disabled as the result of on-duty, service-related injuries." *Middletown* v. *Local 1073,* supra, 61. Our Supreme Court has also recognized that the purpose of § 7-433b (b) is to provide a "maximum cumulative payment" or statutory ceiling, and not to preclude the reduction of the amount of the pension if a municipality's pension plan so provides. *Maciejewski* v. *West Hartford,* supra, 146–47 n.4. In the present case, however, we are not faced with the construction of a municipal ordinance requiring such a setoff or deduction of workers' compensation benefits and disability pension. Moreover, neither party has presented or addressed the issue of whether dual payments of workers' compensation benefits and retirement benefits for the same disability could ever be received under the provisions of § 7-433c. Our holding in this case is limited to the determination of the statutory ceiling imposed by the provisions of § 7-433b (b) when the municipality does not challenge a dual payment of both workers' compensation and retirement benefits.

The defendant argues in its cross appeal that the trial court erred in finding that the increments of payment of the award would continue to be adjusted as the compensation of the plaintiff's successor increases. In view of the fact that we have held that it is the amount of compensation that the plaintiff would have received if he had continued working which constitutes the statutory cap imposed by § 7-433b (b), we need not reach this issue. The cross appeal is therefore dismissed. The

defendant also argues, however, that the intention of the legislature was to limit the amount of payments that could be received for heart disease and hypertension compensation to the amount that the claimant was making *at the time of his retirement*. The defendant alleges that § 7-433b (b), which provides that the payments received by a recipient or his dependents would not exceed "the weekly compensation being paid, *during their compensable period,* to members of such department in the same position . . ." is unclear. (Emphasis added.) He claims that the term "during their compensable period" is ambiguous because it could relate to either the claimant's period of employment or the period in which the claimant is entitled to receive § 7-433c benefits. It claims, therefore, that faced with this ambiguity, this court should effectuate the legislature's intent to limit the payment of such benefits to the amount of the plaintiff's salary at the time of his retirement.

The legislative history of the statute, however, reflects that the legislature did *not* intend such a construction. Section 7-433b (b), or Public Acts 1977, No. 77-520, was originally raised as a house bill which provided that payments received by a claimant under § 7-433c would not exceed "one hundred percent of the base salary of such person prior to his disability retirement." H.B. 8095, January Session, 1977.[8] That bill, however, was subsequently *replaced* by a bill which was drafted by members of fire and police associations, the House of Representatives, and the Conference of

---

[8] General Statutes § 7-433b (b) was originally raised as House Bill 8095, and was entitled "An Act Concerning a Limitation on Disability Benefits to One Hundred Per Cent of Base Salary." It provided that "no such person shall receive benefits from his municipal employer or the municipal or state retirement system in excess of one hundred per cent of the base salary of such person prior to his disability retirement." H.B. 8095, January Session, 1977.

Municipalities.[9] Conn. Joint Standing Committee Hearings, Labor and Industrial Relations, Pt. 2, 1977 Sess., p. 757. The substitute bill did *not* limit the amount of payments that could be received by a qualified recipient to the amount of the base salary he was receiving at the time of his retirement. Instead, it limited the amount of such payments to the "weekly compensation payable during his or his dependents' compensable period, to members of such department in the same position which was held by such deceased or retired person at the time of his death or retirement." Substitute H.B. 8095; see also Substitute H.B. 8095 as amended by house amendment schedule "A."

By ratifying the substitute bill, therefore, the legislature intended that the statutory ceiling imposed by § 7-433b (b) be changed from the amount of the base salary being paid to the recipient at the time of his retirement to the amount of compensation being paid,

---

[9] House Bill 8095 was referred to the Labor and Industrial Relations Committee, which held hearings on the bills. At such hearings, it was recommended that a substitute bill be enacted. The president of the Uniformed Fire Fighters Association testified at the hearings as follows: "I want to speak in opposition to the bill that deals with the disability benefits for fire and police, Bill no. 8095. The reason I'm going to speak in direct opposition to this . . . [is that] there was a meeting . . . to deal specifically with the heart and hypertension bill for Fire and Police; at which members of both sides of the political persuasion were in attendance as well as the Conference of Municipalities and we did agree to draw up a bill which was going to be in conjunction with the Fire and Police leadership as well as the leadership of the House and the Conference of Municipalities. And I would respectfully suggest that this bill be killed in lieu of the bill that was going to be drawn up by the Conference of Municipalities." Conn. Joint Standing Committee Hearings, Labor and Industrial Relations, Pt. 2, 1977 Sess., p. 757.

The substitute bill was entitled "An Act Concerning Benefits for Policemen or Firemen Disabled or Dead as a Result of Hypertension or Heart Disease." It provided: "The cumulative payments under this section shall not exceed one hundred per cent of the weekly compensation payable during his or his dependents' compensable period, to members of such department in the same position which was held by such deceased or retired person at the time of his death or retirement." Substitute H.B. 8095, April 11, 1977.

during the recipient's compensable period, to members of the department in the same position. The defendant's argument, therefore, is not supported by either the legislative history of § 7-433b (b) or the wording of the statute.

Moreover, the term "compensable period" is not, as the defendant states, ambiguous. The substitute bill originally stated that the cumulative payments that a claimant or his dependents would be able to receive would not exceed the compensation that was payable *"during his or his dependents' compensable period."* By referring to the claimant's dependents, the legislature intended that the term "compensable period" refer to the period in which he *or his dependents* would be entitled to receive benefits under § 7-433c, and not the period in which the claimant was employed. Although the bill was ultimately amended to state that such "payments received by such member or his dependents . . . [would not exceed] the weekly compensation being paid, *during their compensable period,* to members of such department in the same position which was held by such member" (emphasis added), such amendment did *not* change the meaning of the statute. See Amendment, LCO No. 8249, offered by Sen. James J. Murphy, Jr., to Substitute H.B. 8095, Calendar No. 8249. Rather, the legislative history indicates that the amendment was intended to constitute only a clarification or edited version of the original statutory intent. " ' "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative meaning of the original act." ' " *State* v. *McKenna,* 11 Conn. App. 122, 131, 525 A.2d 1374 (1987), quoting *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977); see also *State* v. *Blasko,* supra, 556–57; *Shelton* v. *Commissioner,* 193 Conn. 506, 514, 479 A.2d 208 (1984). We conclude that the legislature intended that

the term "compensable period" be the period in which the recipient or his dependents are entitled to receive benefits under § 7-433c.

We hold, therefore, that the statutory ceiling imposed by § 7-433b (b) is set at the amount of the weekly compensation being paid to members of such department in the same position and at the same pay grade as that attained by the recipient at the time of his death or retirement. That amount is computed by determining the amount of compensation that the recipient would have received if he had continued working during his compensable period, as interpreted herein.

There is error on the plaintiff's appeal, the judgment of execution is set aside and the case is remanded for further proceedings in accordance with this opinion. The defendant's cross appeal is dismissed.

In this opinion the other judges concurred.