### JOSEPH SZUDORA *v.* TOWN OF FAIRFIELD
### (13849)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued March 1—decision released April 17, 1990

*Donal C. Collimore,* assistant town attorney, for the appellant (defendant).

*David J. Morrissey,* for the appellee (plaintiff).

PETERS, C. J. This appeal concerns the calculation of the benefits ceiling that General Statutes § 7-433b (b)

imposes on the compensation to which disabled members of municipal police and fire departments are entitled under General Statutes § 7-433c, the Heart and Hypertension Act.[1] On the basis of stipulated facts, a

[1] General Statutes § 7-433b (b) provides: "Notwithstanding the provisions of any general statute, charter or special act to the contrary affecting the noncontributory or contributory retirement systems of any municipality of the state, or any special act providing for a police or firemen benefit fund or other retirement system, the cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c shall be adjusted so that the total of such cumulative payments received by such member or his dependents or survivors shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement. Nothing contained herein shall prevent any town, city or borough from paying money from its general fund to any such member or his dependents or survivors, provided the total of such cumulative payments shall not exceed said one hundred per cent of the weekly compensation."

General Statutes § 7-433c provides: "BENEFITS FOR POLICEMEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments, and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty

workers' compensation commissioner determined that the plaintiff, Joseph Szudora, was not entitled to receive benefits that cumulatively exceeded 100 percent of the base salary of other police officers employed by the defendant, the town of Fairfield. The plaintiff successfully appealed this determination to the compensation review division, which concluded that the ceiling contained in § 7-433b (b) required consideration not only of base pay but also of overtime payments to similarly situated working members of the defendant's police department. The defendant thereafter appealed to the Appellate Court, and we transferred its appeal here pursuant to Practice Book § 4023. We find no error.

As stipulated, the plaintiff was a regular member of the police department of the defendant town, who had passed the requisite physical examination at the time of his employment. During the term of his employment, the plaintiff had substantial overtime and other earnings that exceeded his base salary. The plaintiff there-

and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

after developed symptoms of heart disease and hypertension and, having become totally disabled, was forced to retire. A compensation commissioner awarded him benefits under § 7-433c and related medical benefits, including a special award of 195 weeks of compensation for a 25 percent permanent partial impairment of his cardiovascular system at the rate of $381 per week. In addition to his compensation award under § 7-433c, the plaintiff has been receiving benefits from the Fairfield police pension. The defendant has limited the plaintiff's combined benefits, under § 7-433c and his pension, to 100 percent of the base salary of other town police officers, exclusive of overtime or other earnings.

The compensation review division concluded, contrary to the compensation commissioner, that the defendant has taken too narrow a view of the statutory ceiling on the plaintiff's benefits. Although it did not adopt the plaintiff's view that his benefits should be "capped" by his own average weekly earnings over the four year period before his retirement, the review division disagreed with the defendant's view that the proper measure for the "cap" is the base salary of other police officers in the same position as that formerly held by the plaintiff. Section 7-433b (b) describes the benefits ceiling as "one hundred per cent of the weekly compensation" being paid to comparable officers. The review division construed "weekly compensation" as the "average earnings, including overtime" of comparable police officers, calculated on a periodic basis. Lacking the appropriate statistical data to complete such a comparison for this plaintiff, the review division remanded the case for further proceedings.

The defendant's appeal maintains that overtime earnings are not a proper component in the calculation of "weekly compensation" for the purposes of the benefits "cap" contained in § 7-433b (b). Before we reach

the merits of this claim,[2] we must decide, as a jurisdictional matter, whether this appeal is properly here.

It is axiomatic that appellate review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the compensation review division. *Matey* v. *Estate of Dember*, 210 Conn. 626, 629–30, 556 A.2d 599 (1989); *Schieffelin & Co.* v. *Department of Liquor Control*, 202 Conn. 405, 409–12, 521 A.2d 566 (1987); *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities*, 202 Conn. 150, 156–57, 520 A.2d 186 (1987); *Rapasi* v. *Jenkins Bros.*, 16 Conn. App. 121, 122–23, 546 A.2d 965, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988). The finality of the decision of the review division is called into question in this case because of the review division's order of a remand for further administrative proceedings. The test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed. *Matey* v. *Estate of Dember*, supra, 630.

The review division ordered a remand for the computation of "the average earnings, including overtime, of all Fairfield officers employed during the compens-

---

[2] The defendant has also briefed the issue of the meaning of the language in General Statutes § 7-433b (b) that compares the weekly compensation of a disabled police officer with that of "members of such department in the same position" as was held by the disabled officer at the time of his death or retirement. It is our understanding that neither the compensation review division nor the plaintiff takes issue with the Appellate Court's comprehensive elucidation of this aspect of § 7-433b (b) in *Lundgren* v. *Stratford*, 12 Conn. App. 138, 145–53, 530 A.2d 183, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987). Since this is the view that the defendant also espouses, we need not consider this issue further.

able period in the same position" that the plaintiff held. The proceedings contemplated on remand are therefore confined to the arithmetical task of compiling the requisite fiscal data, a task the review division characterized as "not . . . too difficult." At oral argument, counsel for both parties agreed with the review division's assessment that compliance with its remand order would require the defendant to undertake only a ministerial, noncontroversial compilation of salary information retrievable from an existing computer data bank. We therefore conclude that the decision of the review division was a final judgment.

Our review of the merits of the review division's interpretation of § 7-433b (b) proceeds from well established principles. In order to ascertain and give effect to the apparent intent of the legislature, we must examine the language of the statute in light of the purpose that it was designed to achieve. *Mahoney* v. *Lensink,* 213 Conn. 548, 563, 569 A.2d 518 (1990); *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54–55, 523 A.2d 477 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). The text of § 7-433b (b) provides no definition for the term "weekly compensation," which it sets as the statutory standard of comparison for the ceiling on the Heart and Hypertension Act benefits provided by § 7-433c. We can, however, look for guidance to the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees. *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 97, 491 A.2d 368 (1985); *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117, 411 A.2d 924 (1979); *Kulis* v. *Moll,* 172 Conn. 104, 109, 374 A.2d 133 (1976). This proposition applies as well to the provisions of §§ 7-433c and 7-433b (b), because the measurement of the benefits to which a § 7-433c claimant is entitled is "identical to the bene-

fits that may be awarded to a [claimant] under chapter 568 [the Workers' Compensation Act]." *Felia* v. *Westport,* 214 Conn. 181, 185, 571 A.2d 89 (1990).

Broadly construed, "compensation" includes more than "salary," as other provisions of chapter 568 illustrate. We recently noted in *Deschnow* v. *Stamford,* 214 Conn. 394, 398, 572 A.2d 345 (1990), that the definition of "compensation" in § 7-433c is consonant with the definition of "income" in General Statutes § 31-275 (14), which provides that "income" means "all forms of remuneration to an individual from his employment, including wages, accident and health insurance coverage, life insurance coverage and employee welfare plan contributions." In that case we expressly held that a claimant who, like the present plaintiff, is receiving special benefits as compensation for his permanent partial cardiovascular impairment pursuant to General Statutes §§ 7-433c and 31-308 (d), is also entitled to compensation in the form of fringe benefits under General Statutes § 31-284b. Other statutes similarly reflect the legislative understanding that "compensation" is more capacious than "salary." See, e.g., General Statutes §§ 45-29u and 51-47b.

The legislative history of § 7-433b (b) supports the conclusion that "weekly compensation" includes *all* forms of weekly remuneration. As the Appellate Court recounted in *Lundgren* v. *Stratford,* 12 Conn. App. 138, 150–52, 530 A.2d 183, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987), the original house bill that led to the enactment of § 7-433b (b) described the statutory ceiling as "one hundred per cent of the base salary" of a disabled municipal employee prior to his retirement. H.B. No. 8095, January Session, 1977. This bill was, however, replaced by a substitute bill establishing the present standard for comparison, i.e., "one hundred per cent of the weekly compensation" payable to a simi-

larly situated, but not disabled, municipal employee. Substitute H.B. No. 8095, April 11, 1977. Like the compensation review division, we attach significance to the legislative decision to substitute "weekly compensation" for "base salary." In light of the remedial nature of the Heart and Hypertension Act, this court should not impose greater constraints on the benefits afforded to disabled police officers and firefighters than the legislature has chosen to adopt. See *Costello* v. *Fairfield,* 214 Conn. 189, 194, 571 A.2d 93 (1990).

In requiring the calculation of "weekly compensation" to include overtime as well as base salary, the compensation review division made no distinction between the sources from which overtime payments are derived. The defendant notes, in its brief, that its police officers "work a variety of overtime jobs, some for the [police] department, and some for outside contractors and utility companies, with the department acting as a conduit for payment. All these earnings, however, go on the officer's W-2 form as total earnings for a year." On this state of the record, we conclude that the decision of the compensation review division is a reasonable construction of § 7-433b (b) "that warrants respect as the considered judgment of the governmental agency vested with primary authority for enforcing our workers' compensation statutes. See *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599, 522 A.2d 771 (1987); *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 493, 362 A.2d 785 (1975)." *Felia* v. *Westport,* supra, 188.

There is no error.

In this opinion SHEA, GLASS and HULL, Js., concurred.

CALLAHAN, J., dissented.