## IN RE COREY E. ET AL.*
## (14557)

Heiman, Schaller and Spear, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Reporter of Judicial Decisions

Argued September 21, 1995—decision released February 20, 1996

*Patrice A. Cohan*, with whom was *David Brian Carr*, for the appellants (respondents).

*Michael J. Besso*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

SPEAR, J. The respondents appeal from the trial court's judgment extending a previously ordered commitment of their two minor children to the department of children and families (DCF).[1] They assert that Gen-

---

[1] General Statutes § 46b-129 (d) provides in pertinent part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit him to the commissioner of children and families for a maximum period of eighteen months, unless such period is extended in accordance with provisions of subsection (e) of this section . . . ."

eral Statutes § 46b-129 (e)[2] precludes an extension of commitment where, as here, DCF has filed a petition to terminate parental rights. We affirm the judgment of the trial court.

The trial court found the following facts. The two minor children were adjudicated neglected on March 20, 1992, and committed to the custody of DCF for a period of eighteen months. On August 10, 1993, DCF successfully petitioned the court to extend the commitment for an additional eighteen months through November 3, 1993. On October 27, 1993, the commitment was again extended to March 20, 1995.

On November 30, 1994, DCF petitioned to terminate the respondents' parental rights to the two minor children pursuant to General Statutes § 17a-112 (a).[3] These petitions have not been heard. On December 22, 1994, DCF filed petitions to extend the commitment for an additional eighteen months through September 20, 1996.

The respondents moved to strike the petition claiming that § 46b-129 (e)[4] precludes DCF from moving to extend a commitment after filing a petition to terminate parental rights during the same commitment period. The court denied the motion to strike and granted the extension. This appeal followed.

[2] General Statutes § 46b-129 (e) provides in pertinent part: "Ninety days before the expiration of each eighteen-month commitment made in accordance with the provisions of subsection (d) of this section and each extension made pursuant to the provisions of this subsection, the commissioner of children and families shall petition the court either to (1) revoke such commitment, in accordance with the provisions of subsection (g) of this section, or (2) terminate parental rights in accordance with the provisions of section 17a-112, or (3) extend the commitment beyond such eighteen-month period . . . ."

[3] General Statutes § 17a-112 (a) provides in pertinent part: "In respect to any child committed to [DCF] . . . the commissioner . . . may petition the court for the termination of parental rights with reference to such child . . . ."

[4] See footnote 2.

## I

We first address the question of mootness that arose at oral argument. Mootness deprives this court of subject matter jurisdiction. *Loisel* v. *Rowe,* 233 Conn. 370, 378, 660 A.2d 323 (1995); *First Trust National Assn.* v. *Hill,* 36 Conn. App. 171, 174, 649 A.2d 798 (1994). The test for determining mootness is not "[w]hether the [respondents] *would* ultimately be granted relief . . . . The test, instead, is whether there is any practical relief this court *can* grant the appellant." (Emphasis added.) *Citicorp Mortgage, Inc.* v. *Hairiston,* 34 Conn. App. 138, 138–39, 640 A.2d 146 (1994). If the minor children must remain in the custody of DCF pending the outcome of the petition to terminate parental rights, a decision by this court that the extension of the commitment was improper would afford no practical relief to the respondents. "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Gagnon* v. *Planning Commission,* 24 Conn. App. 413, 415, 588 A.2d 1385 (1991), aff'd, 222 Conn. 294, 608 A.2d 1181 (1992).

Section 46b-129 (d)[5] provides for a maximum period of commitment of eighteen months. Because the previous commitment has expired, the minor children will have to be returned to the respondents if we determine that the extension was improper. The return of the respondents' children pending the resolution of the termination petition, even if it is only for a short period of time, is sufficient practical relief to accord this court subject matter jurisdiction.

## II

The respondents contend that once a child is committed to DCF pursuant to § 46b-129, DCF can elect only

[5] See footnote 1.

one of three statutory options ninety days prior to the end of the maximum period of commitment. DCF can petition the court (1) to revoke the commitment, (2) to terminate parental rights, or (3) to extend the commitment period, but DCF, they assert, cannot seek both an extension of commitment and a termination of parental rights. The respondents proffer two arguments in support of their claim. First, they assert that because the statute uses the disjunctive "or," DCF is limited to one alternative by the statute's plain language. Second, the respondents assert that the legislature intended that, within the eighteen months following commitment, or within any extension of the commitment, DCF should develop a plan either to reunite the family or to terminate parental rights. If DCF cannot make that determination within eighteen months, it may seek an extension of the commitment. During such an extended commitment period, DCF would again have an opportunity to decide whether to seek reunion of the family or termination of parental rights. Because both arguments turn on the intent of the legislature, they will be discussed together.

"[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994).

The respondents correctly assert that "[w]hen the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention

of the legislature." *Norwich* v. *Housing Authority*, 216 Conn. 112, 117–18, 579 A.2d 50 (1990); *Sagamore Group, Inc.* v. *Commissioner of Transportation*, 29 Conn. App. 292, 300, 614 A.2d 1255 (1992). The respondents reason that because the alternatives in § 46b-129 (e) are stated in the disjunctive, the plain language of the statute limits DCF to petitioning for only one of the three statutory alternatives.

Our Supreme Court has held, however, that use of the disjunctive "or" in a statute is not controlling where such use clashes with clear legislative intent. "The disjunctive 'or' can be construed as 'and' where such construction clearly appears to have been the legislative intent." *D'Occhio* v. *Connecticut Real Estate Commission*, 189 Conn. 162, 170, 455 A.2d 833 (1983); *Dana-Robin Corp.* v. *Common Council*, 166 Conn. 207, 221, 348 A.2d 560 (1974). Before determining whether the word "or" makes the statutory alternatives mutually exclusive, we must search for the intent of the legislature and then determine whether the disjunctive use of "or" clashes with that intent.

Our Supreme Court has also addressed the question of what the legislature intended to accomplish by enacting § 46b-129 (d) and (e). "The legislative intent underlying the maximum period of commitment is two-fold: First, the General Assembly recognized a concern for those children, committed by the court to the [DCF] commissioner, and who then were placed in foster care for indeterminate and often lengthy periods of time without any further judicial review. . . . The legislative limitation on the period of commitment to [DCF] clearly promoted periodic judicial review of actions taken, including placements of children in foster homes by that agency. Second, the General Assembly intended to conform the Connecticut State Plan for Foster Care and Adoption Assistance to the requirements of federal

law." (Citations omitted.) *In re Juvenile Appeal (85-BC)*, 195 Conn. 344, 358–60, 488 A.2d 790 (1985).

The legislature clearly intended to prevent children from falling into a situation where they would be committed to DCF without periodic reviews of the commitments. Those reviews would enable the court to determine, within a reasonable time, whether the children could be returned to their parents, or whether parental rights should be terminated so that the children would become available for adoption or permanent foster care.

The statutory scheme that requires judicial review at least once in every eighteen month period prevents any child from spending years in foster care with no plan for permanent placement. By filing a petition to terminate parental rights after obtaining an extension of a commitment, DCF is taking a necessary step toward permanent placement of the child in an adoptive or foster home. This is consistent with the policy underlying the statute.

Our search for legislative intent is further guided by two well known principles of statutory construction. First, we presume that when the legislature enacts a law, it "did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law." (Internal quotation marks omitted.) *Lundgren v. Stratford*, 12 Conn. App. 138, 148, 530 A.2d 183, cert. denied, 205 Conn. 808, 532 A.2d 767 (1987). Second, "[t]he law favors rational and sensible statutory construction. . . . The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . . When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre

results." (Citations omitted; internal quotation marks omitted.) *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984).

A related statute expressly authorizes the simultaneous or sequential filing of custody and termination petitions. General Statutes § 17a-112 (e) provides in part that "[a]ny petition brought by the commissioner of children and families to the superior court, pursuant to subsection (a) of section 46b-129, may be accompanied by or, upon motion by the petitioner, *consolidated* with a petition for termination of parental rights filed in accordance with this section with respect to such child, notwithstanding that such child has not been committed to the commissioner of children and families. . . ." (Emphasis added.) Even though this statute applies to children who are not committed, this express authorization of simultaneous or coterminous petitions undercuts the respondents' claim that allowing two such petitions to pend at the same time is antithetical to the intent of the legislature.

The respondents' interpretation of § 46b-129 (e) is ineffective and unworkable because it would require not only that DCF file a petition to terminate parental rights ninety days prior to the expiration of a commitment, but also that the petition be heard and decided within that time period. If those two events did not occur within that period, the children would have to be returned to the parents.[6] While it is possible for this to occur within ninety days,[7] it is unlikely that the

[6] The respondents assert that the children would not be returned to the parents if the commitment expires before the termination petition is heard. They argue that DCF could keep custody of the children pursuant to General Statutes § 17a-10 (a). That statute provides that "[a]ny child committed to [DCF] by the superior court shall be deemed to be within the custody of the commissioner until such commitment has been terminated." They offer no authority or analysis in support of this claim that is contrary to the plain language of the statute.

[7] We are not called upon to decide whether a petition may be filed prior to ninety days before the commitment expires. The respondents' claim is

legislature intended the custody of committed children to turn on such an unpredictable sequence of events, particularly in view of General Statutes § 51-183b, which allows a trial court up to 120 days to decide the case after the trial is concluded. In addition, the respondents' interpretation of the statute could lead to the bizarre result of forcing DCF to return the children to the parent whose neglect caused the commitment. This return would not be the result of a court decision, but would occur simply because the termination petition had not been decided within the ninety day period.

For the foregoing reasons, we conclude that the legislature clearly intended to allow DCF to petition for an extension of commitment pursuant to § 46b-129 (e) even where a petition to terminate parental rights has been filed and is pending. This interpretation avoids bizarre and unworkable results and advances the policies that underpin the statute.

The judgment is affirmed.

In this opinion the other judges concurred.

that, while a child is committed, DCF can never pursue both an extension of commitment and a termination of parental rights.