## JOSEPH CLEVELAND $v.$ U.S. PRINTING INK, INC., ET AL.
### (14015)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, HULL and BORDEN, Js.

Argued December 4, 1990—decision released March 26, 1991

*Robert E. Beach, Jr.,* for the appellants (defendants).

*Dennis A. Ferdon,* with whom was *Lori M. Serra,* for the appellee (plaintiff).

HULL, J. The defendants appeal the decision of the Appellate Court affirming the decision of the workers' compensation review division (review division) which affirmed the decision of the workers' compensation commissioner for the second district (commissioner) granting the plaintiff's motion to preclude. We affirm.

Although the facts are set forth in the decision of the Appellate Court; *Cleveland* v. *U.S. Printing Ink, Inc.,* 21 Conn. App. 610, 575 A.2d 257 (1990); we discuss those facts pertinent to the issues. On March 11, 1986, the plaintiff, Joseph Cleveland, a resident of New Jersey employed as a truck driver by the named defendant,[1] U.S. Printing Ink, Inc., a New Jersey corporation, was injured during the course of his employment in the town of South Windsor. Thereafter, the plaintiff received workers' compensation benefits for total incapacity under the New Jersey Workmen's Compensation Act. On or about September 22, 1986, the plaintiff mailed to the named defendant a notice of his injury and his intent to file a claim for benefits under the Connecticut Workers' Compensation Act, General Statutes § 31-275 et seq. After the named defendant failed to file a timely notice of its intent to contest liability for the plaintiff's claim, the plaintiff filed a motion, pursuant to General Statutes § 31-297 (b),[2] to preclude the

---

[1] Travelers Insurance Company, the employer's insurer, is also a defendant.

[2] General Statutes § 31-297 (b) provides: "Whenever liability to pay compensation is contested by the employer, he shall file with the compensation commissioner, on or before the twentieth day after he has received a written notice of the claim, a notice in accord with a form prescribed by the commissioners stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged

defendants from contesting liability or the extent of the plaintiff's disability. In response, the defendants challenged the jurisdiction of the commissioner to award benefits to the plaintiff. The commissioner determined that between Connecticut deliveries and driving through the state, the plaintiff spent 35 to 40 percent of his employment time in Connecticut. Furthermore, the plaintiff "ha[d] enough significant contacts with this state and . . . therefore Connecticut [had] an interest in applying its statutes for the protection of working men injured within its borders." The commissioner thereupon granted the plaintiff's motion to preclude and ordered the defendants to accept liability for the plaintiff's claimed injury.

The defendants appealed the commissioner's decision to the review division, which affirmed, concluding that the commissioner had made an appropriate factual finding about the plaintiff's employment situs, and had correctly applied conflict of laws principles. Thereafter, the defendants appealed the review division's decision to the Appellate Court, which also affirmed, concluding, inter alia, that: (1) Connecticut had an interest in compensating the plaintiff; (2) New Jersey had no legitimate interest in preventing Connecticut from awarding the plaintiff supplemental compensation; and (3) "the commissioner correctly applied the law . . . that the facts sufficiently supported his decision, and . . . the compensation review division correctly affirmed the decision." *Cleveland* v. *U.S. Printing Ink, Inc.,* supra, 617–18. We subsequently granted the defendants' peti-

injury or death and the specific grounds on which the right to compensation is contested, and a copy thereof shall be sent to the employee. If the employer or his legal representative fails to file the notice contesting liability within the time prescribed herein, the employer shall be conclusively presumed to have accepted the compensability of such alleged injury or death and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or the extent of his disability."

tion for certification to appeal to this court limited to the following issues: (1) " 'Did the Appellate Court properly conclude that because there was sufficient contact with Connecticut by the plaintiff truck driver and his employer, both being domiciled in New Jersey, to give this state jurisdiction, the Connecticut workers' compensation law, both procedural and substantive, should apply? [and (2)] Should the Appellate Court have dismissed the appeal suo motu for lack of a final administrative determination?' " *Cleveland* v. *U.S. Printing Ink, Inc.*, 216 Conn. 802, 577 A.2d 715 (1990).

## I

We must first address the question of whether the Appellate Court should have dismissed the defendants' appeal for lack of a final administrative determination. This question has two subparts: does the Appellate Court have jurisdiction to hear an appeal from the review division in the absence of a final decision; does the record in this case manifest the existence of a final decision? We conclude that a final decision is a jurisdictional prerequisite to an appeal and that there was such a final decision in this case.

The defendants claim that because the right of appeal from the review division to the Appellate Court is statutory; General Statutes § 31-301b;[3] and because General Statutes § 31-301b nowhere states that the decision appealed from must be final, a final decision was not required in order for the defendants to appeal the decision of the review division. Practice Book § 2015 provides, however, that "[t]he practice and procedure for workers' compensation appeals to the appellate court shall conform to the rules of practice governing other

---

[3] General Statutes § 31-301b provides: "Any party aggrieved by the decision of the compensation review division upon any question or questions of law arising in the proceedings may appeal the decision of the compensation review division to the appellate court."

appeals to the appellate court . . . ." The practice and procedure of the Appellate Court require that, "[i]f a party is aggrieved by the decision of the court or judge . . . that party may appeal from the final judgment of the court or of such judge . . . ." Practice Book § 4000; see also Practice Book § 2000. "It is clear, therefore, that in order for a decision of the review division to be appealable under General Statutes § 31-301b it must be a decision which has the same elements of finality as a final judgment rendered by a trial court." *Timothy* v. *Upjohn Co.*, 3 Conn. App. 162, 164, 485 A.2d 1349 (1985); see also *Szudora* v. *Fairfield*, 214 Conn. 552, 556, 573 A.2d 1 (1990); *Matey* v. *Estate of Dember*, 210 Conn. 626, 630, 556 A.2d 599 (1989).

The plaintiff claims that the decision of the review division was a final decision appealable pursuant to § 31-301b. The defendants assert, to the contrary, that the decision is final only if the plaintiff's claim for workers' compensation benefits is limited to a claim for incapacity benefits already received because otherwise, the plaintiff may still file a claim for specific benefits. We agree with the plaintiff.

"It is axiomatic that appellate review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the compensation review division. *Matey* v. *Estate of Dember*, [supra, 629–30]; *Schieffelin & Co.* v. *Department of Liquor Control*, 202 Conn. 405, 409–12, 521 A.2d 566 (1987); *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities*, 202 Conn. 150, 156–57, 520 A.2d 186 (1987); *Rapasi* v. *Jenkins Bros.*, 16 Conn. App. 121, 122–23, 546 A.2d 965, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988). . . . The test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision

is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed. *Matey* v. *Estate of Dember,* supra, 630." *Szudora* v. *Fairfield,* supra. "A decision of the compensation review division is a final judgment if the claimant involved is entitled to temporary total disability benefits and the salary and period of time during which there was an inability to work are known." *Guinan* v. *Direct Marketing Assn., Inc.,* 22 Conn. App. 515, 517, 578 A.2d 129 (1990), aff'd, 23 Conn. App. 805, 580 A.2d 1249 (1990).

It is undisputed that the plaintiff sustained an injury during the course of his employment for which he is entitled to receive total incapacity benefits. Furthermore, the period of the plaintiff's disability, the plaintiff's salary, the amount of workers' compensation benefits the plaintiff had received in New Jersey and the amount of benefits he would receive under the Connecticut Workers' Compensation Act are also undisputed. The proceedings on remand from the compensation review division, therefore, would be purely ministerial, requiring no exercise of independent discretion and no further taking of evidence. Moreover, because a future claim for specific benefits would require a separate proceeding before the commissioner, the possibility of such a claim does not affect the finality of the present decision of the review division. Accordingly, we conclude that the decision of the review division was a final decision appealable pursuant to § 31-301b.

## II

We now turn to the substantive question concerning the applicability of Connecticut workers' compensation law. Before addressing the substance of the defendants' claim, we must first clarify the nature of the issue pre-

sented. Although the Appellate Court characterized the issue as one of subject matter jurisdiction; *Cleveland* v. *U.S. Printing Ink, Inc.,* supra, 21 Conn. App. 614–16; the question of whether one state will award supplemental workers' compensation benefits to a claimant who previously received benefits under the laws of another state is more appropriately deemed a question of conflict of laws. See *Thomas* v. *Washington Gas Light Co.,* 448 U.S. 261, 278–86, 100 S. Ct. 2647, 65 L. Ed. 2d 757 (1980); *Simaitis* v. *Flood,* 182 Conn. 24, 31, 437 A.2d 828 (1980); 1 Restatement (Second), Conflict of Laws § 181; 4 A. Larson, Workmen's Compensation Law § 85.00, pp. 16-18–16-47. Indeed, although " 'the two [questions] usually coincide, since normally the rights created by the compensation act of one state cannot be enforced in another state . . .' "; *Cleveland* v. *U.S. Printing Ink, Inc.,* supra, 21 Conn. App. 616, quoting 4 A. Larson, supra, § 84.00, p. 16-1; the question of jurisdiction ordinarily precedes the conflict of laws question, for only after the commissioner determines that he has authority to entertain the action does he proceed to the "choice" of whether to award benefits under our Workers' Compensation Act or, rather, to defer to the earlier grant of benefits under the laws of another state. It is conflict of laws principles, therefore, that determine the merits of the defendants' principal assertions.

The defendants claim that the Appellate Court improperly concluded that because the plaintiff had sufficient contacts with Connecticut to support the commissioner's subject matter jurisdiction, Connecticut workers' compensation law should apply to the present case.[4] According to the defendants, because the plain-

---

[4] The defendants also claim that application of Connecticut law (1) failed to afford the judicial proceeding in New Jersey the full faith and credit to which it is entitled under article four, § 1, of the federal constitution, and (2)

tiff has the most significant contacts with New Jersey, under conflict of laws principles, the law of New Jersey governs exclusively the plaintiff's claim for workers' compensation benefits. We do not agree.

Historically, the employment contract determined whether a claimant might receive workers' compensation benefits under our Workers' Compensation Act. *Morin* v. *Lemieux,* 179 Conn. 501, 503, 427 A.2d 397 (1980); *Pettiti* v. *Pardy Construction Co.,* 103 Conn. 101, 106–107, 130 A. 70 (1925); *Hopkins* v. *Matchless Metal Polish Co.,* 99 Conn. 457, 460, 121 A. 828 (1923); *Banks* v. *Howlett Co.,* 92 Conn. 368, 371, 102 A. 822 (1918); *Douthwright* v. *Champlin,* 91 Conn. 524, 526, 100 A. 97 (1917); *Kennerson* v. *Thames Towboat Co.,* 89 Conn. 367, 371, 94 A. 372 (1915). An employee injured in the course of his employment was entitled to receive workers' compensation benefits under our act as long as the employment contract pursuant to which he was employed was executed in Connecticut, regardless of where performance was rendered. *Morin* v. *Lemieux,* supra.

Nevertheless, despite the apparent clarity of a rule based exclusively on the place of the employment contract and the ease with which it could be applied to promote uniformity, simplicity and convenience, because we were concerned about "the impossibility of anticipating all the situations which [might] develop in this difficult feature of the compensation law, and of making . . . an unvarying rule which shall cover all possible cases," the rule was adapted where necessary

---

was fundamentally unfair and a denial of due process, because there is no similar preclusion provision under the law of New Jersey, which the defendants expected to govern their obligations. The defendants failed to raise their constitutional claims in their appeal to the review division and, therefore, they were not properly preserved for subsequent review by the Appellate Court. This court is not bound to consider claims not properly raised below. Practice Book § 4185. We, therefore, decline to address these claims.

to "best promote the interests of both employers and employees." *Hopkins* v. *Matchless Metal Polish Co.,* supra, 466–67; see also *Banks* v. *Howlett Co.,* supra. Thus, in addition to providing workers' compensation benefits to those employed pursuant to contracts executed within Connecticut, if an employee had been injured in Connecticut during the course of his employment but the employment contract had been executed in another state that did not give extraterritorial effect to its own workers' compensation act, the contract was interpreted as having implicitly incorporated Connecticut's Workers' Compensation Act within its terms unless the act had been explicitly rejected by one of the parties. *Hopkins* v. *Matchless Metal Polish Co.,* supra, 464. Likewise, if the sole and specific object of the foreign contract was employment in Connecticut, an employee injured in Connecticut had the option of receiving benefits under our act. *Banks* v. *Howlett Co.,* supra.

In *Pettiti* v. *Pardy Construction Co.,* supra, 108–109, we limited *Banks* v. *Howlett Co.,* supra, to its facts because we were concerned about inconsistent application of the general rule. While our act had been interpreted to provide benefits to employees whose contracts were to be performed solely in Connecticut, those employees whose contracts were executed in Connecticut but performed solely outside its borders, were also afforded benefits under our act. Nevertheless, we thereafter discarded the place of contract conflict of laws approach for determining whether a claimant was entitled to receive benefits under our Workers' Compensation Act as unduly restrictive in view of the remedial purpose of our workers' compensation law. *Simaitis* v. *Flood,* supra.

In *Simaitis,* the plaintiff, a resident of Connecticut, had been hired and was principally employed in Con-

necticut by a Connecticut corporation; she was injured during the course of her employment in Tennessee. We concluded that "[a]lthough the contract choice of law rule is a certain one, easily applied . . . such a rule would serve to preclude the successive incremental awards sanctioned by *Thomas* v. *Washington Gas Light Co.,* [supra]; *Industrial Commission of Wisconsin* v. *McCartin,* 330 U.S. 622, 67 S. Ct. 886, 91 L. Ed. 1140 (1947); Restatement (Second), 1 Conflict of Laws § 182, comment b; Restatement, Conflict of Laws § 403; 4 Larson, [supra,] § 85.60, pp. 16-29–16-30; because the employment contract is typically made in only one jurisdiction." *Simaitis* v. *Flood,* supra, 27–28. Moreover, "an employee's effort to maximize her compensation benefits and remedies would be frustrated because relief would be limited to that provided by the jurisdiction where the contract was made . . . [and] an employer [could] avoid the full extent of potential liability imposed by the Connecticut Workers' Compensation Act simply by making the contract elsewhere. . . ." Id., 28. We also declined to confine our conflict of laws analysis to the doctrine of lex loci delicti because "if this court were to adhere to a strict application of the place-of-the-injury rule, a Connecticut resident and employee of a Connecticut employer under a Connecticut contract, who was injured while on temporary business in another jurisdiction might be left with no tort remedy whatsoever if that other jurisdiction applied a different choice of law rule." Id., 30.

Because both the due process interest analysis utilized by the United States Supreme Court to determine whether a state may constitutionally apply its workers' compensation act to afford a claimant benefits; see *Thomas* v. *Washington Gas Light Co.,* supra; 1 Restatement (Second), Conflict of Laws § 181;[5] as well as the

---

[5] The Second Restatement of Conflict of Laws § 181 provides that "[a] State of the United States may consistently with the requirements of due

place of the employment relation approach; 4 A. Larson, supra, § 87.40; supported application of Connecticut workers' compensation law, we concluded in *Simaitis* that the provisions of our act applied. *Simaitis* v. *Flood,* supra, 31. Since, however, both views compelled the same result, it was unnecessary to adopt a comprehensive conflict of laws rule for workers' compensation cases. Id.

Recently, we observed our earlier recognition of the interest analysis of § 181 of the Second Restatement of Conflict of Laws for resolving conflict of laws issues in workers' compensation cases. *O'Connor* v. *O'Connor,* 201 Conn. 632, 638, 519 A.2d 13 (1986), citing *Simaitis* v. *Flood,* supra, 32–33. Although *O'Connor* dealt with conflict of laws principles in a tort action rather than in a workers' compensation case, we relied on *Simaitis* for the proposition that "we are not wholeheartedly committed to application of lex loci as the sole approach to choice of law in all torts cases." *O'Connor* v. *O'Connor,* supra.

By its own terms, however, § 181 of the Restatement is not dispositive of the issue presented. Section 181 merely "sets forth the situations in which it is *permissible* for a State to apply its workmen's compensation statute. Whether the courts of a State will in fact apply its statute in any one or more of these situations depends . . . on the language of the statute and on

process award relief to a person under its workmen's compensation statute, if (a) the person is injured in the State, or (b) the employment is principally located in the State, or (c) the employer supervised the employee's activities from a place of business in the State, or (d) the State is that of most significant relationship to the contract of employment with respect to the issue of workmen's compensation under the rules of §§ 187-188 and 196, or (e) the parties have agreed in the contract of employment or otherwise that their rights should be determined under the workmen's compensation act of the State, or (f) the State has some other reasonable relationship to the occurrence, the parties and the employment."

the way in which the statute is interpreted by the courts." (Emphasis added.) 1 Restatement (Second), Conflict of Laws § 181, comment a, pp. 537–38.

The Restatement discusses three approaches taken by courts to determine the territorial application to be given to their local workers' compensation statutes in the absence of explicit statutory authority.[6] Id., comment b, pp. 539–40. According to these views, relief should be obtainable under the workers' compensation act of the state (1) with the most significant relationship to the employment, or (2) with the most significant relationship to the contract of employment, or (3) whose local law would be applied to determine the parties' rights and liabilities in tort. Id., comment b. Implementing the choices suggested by the Restatement and in conformity with the 1972 recommendation of the National Commission on State Workmen's Compensation Laws, "[i]n the majority of states, the local statute will be applied if the place of injury, *or* the place of hiring, *or* the place of employment relation is within the state." (Emphasis added.) 4 A. Larson, supra, § 87.00, p. 16-67;[7] see also 1 Restatement

---

[6] The dissent concludes that because "[w]orkers' compensation cases are classified as 'wrongs' by the Restatement and thus present an 'issue in tort,' " pursuant to § 145 (1) of the Second Restatement of Conflict of Laws, the rights and liabilities of the parties in workers' compensation cases are determined by the law of the state which has the most significant relationship to the occurrence and the parties. We disagree. Chapter seven of the Restatement of Conflict of Laws discusses the general topic entitled "Wrongs." 1 Restatement (Second), Conflict of Laws pp. 411–12. Within the general topic, the following subtopics are delineated along with their applicable provisions: torts; §§ 145–174; actions for death; §§ 175–180; and workers' compensation; §§ 181–185. Id. We conclude, therefore, that because the Restatement views conflict of laws issues in tort and workers' compensation actions as distinct, § 145 is not applicable to workers' compensation cases.

[7] "Twenty-two jurisdictions cover all in-state injuries." 4 A. Larson, Workmen's Compensation Law § 87.13, p. 16-72. They are as follows: Alabama, Alaska, Colorado, Delaware, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas,

(Second), Conflict of Laws § 181, comment b, p. 540 (court that adheres to one of three approaches discussed may on occasion adhere to another view in order to justify awarding relief to employee under its workers' compensation laws). According to Professor Larson, this rule has introduced "a much greater degree of uniformity and compatibility . . . into this formerly-ragged area of the law." 4 A. Larson, supra, § 87.11, p. 16-67.[8] We conclude that the conflict of laws rule recommended by the national commission and Professor Larson, adopted in the majority of jurisdictions, is the rule best suited to serve the purposes of our Workers' Compensation Act.

" 'The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer.' (Citation omitted.) *Jett* v. *Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979). The act is to be broadly construed to effectuate the purpose of providing compensation 'for an injury arising out of and in the course of the employment regardless of fault.' *Klapproth* v.

---

Kentucky, Louisiana, Missouri, Nebraska, New Jersey, New Mexico, North Carolina, Pennsylvania, South Carolina, Washington, Wisconsin and the District of Columbia. Id., § 87.13, p. 16-72 n. 9. The following six jurisdictions exclude coverage if there is coverage in another state and if that state grants reciprocity: California, Mississippi, Montana, Nevada, Rhode Island and South Dakota. Id., § 87.13, p. 16-72 n.13.

[8] The dissent, citing *Simaitis* v. *Flood,* 182 Conn. 24, 34, 437 A.2d 828 (1980), states that according to Professor Larson, " 'the applicable law in a workers' compensation case is the law of the place of the employment relation . . . .' " We note that in *Simaitis,* the comments of Professor Larson were interpreted too broadly. Although Larson states that "[o]f the three original theories on extraterritoriality—tort, contract, and employment relation—the last is the most relevant to compensation theory and the least artificial"; 4 A. Larson, Workmen's Compensation Law § 87.41, p. 16-114; he notes that, in practice, the rule can be unworkable, concluding that while the place of the injury and the place of the contract are relatively easy to identify, "the whereabouts of a relation between two people has a somewhat more mystic quality." Id., § 87.42, p. 16-118.

*Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968) . . . . The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes. See *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117, 411 A.2d 924 (1979)." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 97–98, 491 A.2d 368 (1985).

Connecticut has an "interest in compensating injured employees to the fullest extent possible." *McGowan* v. *General Dynamics Corporation/Electric Boat Division,* 15 Conn. App. 615, 622, 546 A.2d 893 (1988), aff'd, 210 Conn. 580, 556 A.2d 587 (1989); see also *Simaitis* v. *Flood,* supra, 28. "Regardless of where an employee first seeks an award of benefits, he or she is entitled to the maximum amount allowed to an individual under either comprehensive legislative scheme." *McGowan* v. *General Dynamics Corporation/Electric Boat Division,* supra, 623. Furthermore, although the plaintiff in this case was able to obtain workers' compensation benefits under the laws of New Jersey, the propriety of the rule we adopt today must be considered not only in light of the facts of this case but with an eye towards situations that are likely to arise in the future. See *Carroll* v. *Lanza,* 349 U.S. 408, 413, 75 S. Ct. 804, 99 L. Ed. 1183 (1955). Thus, while our adoption of this rule incidentally serves the plaintiff's desire to obtain the maximum amount of benefits to which he is entitled, it, more importantly, protects those claimants who, because the various incidents of their employment and their injury are each linked to a different jurisdiction, may be at risk with respect to their eligibility for workers' compensation benefits. See, e.g., *House* v. *State Industrial Accident Commission,* 167 Or. 257, 117 P.2d 611 (1941) (plaintiff left without workers' compensation remedy for injury sustained while working temporarily in Oregon; employment contract executed in

Oregon, which used place of employment rule, and place of employment in California, which adhered to place of contract rule).

The remedial purpose of our Workers' Compensation Act supports application of its provisions in cases where an injured employee seeks an award of benefits and Connecticut is the place of the injury, the place of the employment contract or the place of the employment relation. We conclude, therefore, that because the plaintiff sustained an employment-related injury in Connecticut, the Appellate Court properly concluded that the review division correctly affirmed the commissioner's decision to apply Connecticut workers' compensation law, specifically § 31-297 (b).

The judgment is affirmed.

In this opinion PETERS, C. J., GLASS and BORDEN, Js., concurred.

SHEA, J., with whom CALLAHAN and COVELLO, Js., join, dissenting. I agree with Part I of the majority opinion that the decision of the review division was final and thus appealable. I also agree with the conclusion reached in Part II that the plaintiff's contacts with Connecticut were sufficient to support the exercise of jurisdiction by the workers' compensation commissioner in this state. Since Connecticut is an appropriate forum, it would follow that procedural provisions of our workers' compensation statutes, such as the conclusive presumption of compensability created by General Statutes § 31-297, should apply.

I disagree, however, with the portion of Part II that holds the substantive provisions of Connecticut workers' compensation statutes, which provide a higher level of benefits for an injured employee than those of New Jersey, to be the proper choice of law for the determi-

nation of a dispute over the amount of compensation to be paid by a New Jersey employer to its employee, who resides and spends most of his working time in that state. "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." 1 Restatement (Second), Conflict of Laws § 145 (1). We adopted this principle in *O'Connor* v. *O'Connor*, 201 Conn. 632, 650–51, 519 A.2d 13 (1986), and abandoned the traditional doctrine of lex loci delicti. Workers' compensation cases are classified as "wrongs" by the Restatement and thus present an "issue in tort." 1 Restatement (Second), Conflict of Laws § 145 (1), and see §§ 181 through 185.[1] The "most significant relationship" criterion would also be applicable if workers' compensation rights were treated as part of the employment contract. Id., § 188 (1).

It cannot reasonably be contended that the relationship of Connecticut to the issue involved in this case, the amount of compensation the claimant should receive for his injuries, is more significant than that of New Jersey. The nexus with Connecticut is based upon the circumstance that his injury occurred in this state and that 35 to 40 percent of his employment time was spent in making deliveries within or in driving through this state in order to deliver ink at locations in other New England states. Presumably his working time in New Jersey was greater in amount. The plaintiff resided in New Jersey with his family. After the accident in which he was injured, he drove to a hospital in New Jersey for medical treatment, having

---

[1] The only "choice of law" questions in workers' compensation cases on which the Second Restatement of Conflict of Laws explicitly takes a position are with respect to actions for tort or wrongful death by an employee who is eligible for a workers' compensation award. 1 Restatement (Second), Conflict of Laws §§ 184, 185.

received no such treatment in this state. His employer is located in New Jersey, where the employment relationship was created.

In *Simaitis* v. *Flood,* 182 Conn. 24, 34, 437 A.2d 828 (1980), this court approved the view of Professor Larson that "the applicable law in a workers' compensation case is the law of the place of the employment relation, because 'the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay compensation.' " In *Simaitis* we rejected the rule of lex loci delicti as the governing choice of law principle, reasoning that its application "would bestow upon temporary visitors injured in Connecticut all the relief which the Connecticut compensation act affords, but deny that same relief to Connecticut residents injured while on temporary business outside the state, even when all other incidents of the employment . . . are in Connecticut." Id., 29–30. By holding Connecticut law to supersede New Jersey law with respect to the amount of compensation to be paid in this case, the opinion implicitly overrules *Simaitis* sub silentio with respect to its implicit holding that the substantive law of the state with the most significant relationship should control and that the interest of a state in the employment relationship is more significant than any interest arising from the site of an accident. See *O'Connor* v. *O'Connor,* supra, 638.

The opinion does not weigh the relative interests of Connecticut and New Jersey in this workers' compensation dispute. Implicitly it abandons the most significant relationship criterion for resolving a conflict of laws in workers' compensation cases and substitutes a rule allowing a claimant to maximize his benefits to the extent permitted by any forum that may have jurisdiction.

It is a strange rule of law that would give to one party to a legal controversy the right to choose the rule of substantive law to be applied in deciding it simply because, as the claimant, he can select a forum in any state having a sufficient interest to satisfy jurisdictional requirements. Despite its incongruity with conflict of laws theory, however, the rule may be justified in circumstances where a significant interest of one of the potential forum states may be adversely affected if the law of another state under orthodox conflict principles must govern. For example, if New Jersey had provided no workers' compensation for this claimant's injury and he had required medical treatment in this state when he was injured, Connecticut would have a substantial interest in assuring payment of his medical expenses and other needed support while he remained here. The state having the more significant interest with respect to the medical payment aspect of workers' compensation law must certainly be the one whose citizenry would have to bear those expenses in some way or other if they were not borne by the employer.

This claimant, however, received no medical treatment in Connecticut, but drove himself to a hospital emergency room in New Jersey. There is no dispute about payment of his medical expenses or his eligibility for workers' compensation benefits to the extent provided by New Jersey law. The claimant has already received this allowance. The only remaining issue is whether this court should defer to New Jersey's primary interest in setting the appropriate level of compensation benefits to be paid by a New Jersey employer to a resident employee who spends most of his working time in that state. I fail to perceive what interest of Connecticut can justify overriding New Jersey's determination of the appropriate level of compensation benefits for New Jersey employers and their employees.

The majority argues that Connecticut has an interest to assure that out-of-state employees who suffer compensable injuries within our borders receive the maximum benefits available when this state is chosen as the forum, regardless of New Jersey's great interest in setting the benefit levels to be paid by New Jersey employers to their employees, which undoubtedly have an impact on labor costs in that state.[2] If maximization of the claimant's recovery is the appropriate conflict of laws criterion in workers' compensation cases, one may well inquire why it should be confined to this area of the law, as the majority presumably intend, rather than extended to other actions, such as ordinary tort litigation, in which similar conflicts arise. Should Connecticut thus become a mecca for claimants from all corners of the world, provided there exists a sufficient jurisdictional basis for our courts to entertain the litigation?

The majority's argument for maximizing the claimant's benefits as the governing conflict of laws principle is not advanced by referring to the "remedial purpose of our Workers' Compensation Act," because the New Jersey act undoubtedly has the same remedial purpose. All legislation is remedial in that it is intended to change existing law, but there is not the slightest suggestion in our Workers' Compensation Act that it was intended to supersede similar statutes of other states having more significant interests in the employment relationship simply because our enactment provides higher benefits.

Accordingly, I dissent.

---

[2] The rule espoused by the majority will also make it difficult for insurers to underwrite workers' compensation coverage for employers whose employees travel out-of-state frequently, because the level of benefits to be underwritten will be uncertain.