# THOMAS HEALEY *v.* HAWKEYE CONSTRUCTION, LLC, ET AL.
## (AC 30894)

Flynn, C. J., and Alvord and West, Js.*

Argued March 18—officially released October 5, 2010

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Sean C. Donohue,* for the appellant (plaintiff).

*Robert K. Jahn,* for the appellees (defendants).

FLYNN, C. J. This case presents the question, addressed by our Supreme Court in *Burse* v. *American International Airways, Inc.,* 262 Conn. 31, 808 A.2d 672 (2002), of when Connecticut law applies to a plaintiff's claim for workers' compensation benefits. In *Burse,* our Supreme Court clarified that for the law of this state to apply to a claim for such benefits requires, "at a minimum, a showing of a significant relationship between Connecticut and either the employment contract or the employment relationship." Id., 38–39. Applying this rule to the circumstances of the present case, we hold that because the employment contract between the plaintiff employee, who at all relevant times was a resident of this state, and the defendant employer was formed in Connecticut, this state possessed a significant relationship to that contract. Accordingly, Connecticut law properly may be applied to the plaintiff's benefits claim. We reverse the decision of the workers' compensation review board (board), which was to the contrary.

The workers' compensation commissioner for the second district (commissioner) found the following facts. The plaintiff, Thomas Healey, at all relevant times a resident of Connecticut, was an electrician and a

member of the International Brotherhood of Electrical Workers' Union, Local 104, in Boston. In September, 2004, the plaintiff received in Connecticut a telephone call from his union hall indicating that the defendant, Hawkeye Construction, LLC,[1] a utility construction company located in Hauppauge, New York, was looking for workers to travel to Florida to repair hurricane damage. The plaintiff was told that he was to contact the defendant if he was interested in a position. The plaintiff, from Connecticut, telephoned the defendant in New York. During the telephone call, the defendant offered the plaintiff a position of employment in Florida, which offer the plaintiff accepted, and the defendant thereafter held a spot for the plaintiff.

The plaintiff and the defendant provided the commissioner with conflicting testimony as to the relationship between the parties following the telephone call. The plaintiff testified that it was his understanding that he was to be paid by the defendant from the time the telephone call was completed. Charles A. Gravina, a vice president of the defendant, testified that in such situations, the defendant holds a position open for a union member but that the member is not paid for his travel time to the defendant's premises and is paid only from the time he arrives. Gravina further testified that union members are not promised employment until they arrive at the defendant's premises. He also stated that he was unaware of any union member who had had a spot held for him being denied employment after arriving at the defendant's premises.

It was undisputed that after the telephone call was completed, the plaintiff traveled immediately from Connecticut to the defendant's office on Long Island. Upon his arrival in New York, the plaintiff completed a " 'new

---

[1] Gallagher Bassett Claims Services, Inc., is also a defendant in this case. For convenience, we refer to Hawkeye Construction, LLC, as the defendant.

hire packet' " that included payroll and safety information, received protective equipment and was assigned to a crew. On November 8, 2004, while in Florida, the plaintiff suffered a compensable injury to his knee that arose out of and during the course of his employment with the defendant. On July 8, 2005, the plaintiff filed a claim for workers' compensation benefits in Connecticut.[2]

The commissioner concluded that "[a]n employment contract between the [plaintiff] and the [defendant] was formed and consummated during the [plaintiff's] telephone call from Connecticut to the [defendant] in New York."[3] However, he further found that the plaintiff was not paid for his travel from Connecticut to New York and that his employment did not commence, and he did not begin to receive wages, until he arrived at the defendant's facility in New York and completed employment paperwork. Finally, the commissioner concluded that the plaintiff's employment relationship with the defendant took place exclusively outside of Connecticut and that the plaintiff had failed to sustain his burden of proof that there was a "substantial" relationship

[2] The parties stipulated before the commissioner that the plaintiff's claim for workers' compensation benefits, arising out of the same injury, had been accepted in New York prior to his application for benefits in Connecticut. We note that the plaintiff is not thereby precluded from seeking benefits in Connecticut, as "depending on the facts and circumstances of the work-related injury and the nature and place of the employment contract and relationship, more than one state may have a legitimate interest in having an injured employee compensated under the applicable workers' compensation statutes. See, e.g., *Cleveland* v. *U.S. Printing Ink, Inc.*, [218 Conn. 181, 182, 195, 588 A.2d 194 (1991)] (upholding award of benefits in this state after claimant already had received benefits in another state) . . . ." (Citation omitted.) *Jaiguay* v. *Vasquez*, 287 Conn. 323, 346, 948 A.2d 955 (2008).

[3] The commissioner's original finding and dismissal stated that "[a]n employment contract between the [plaintiff] and the [defendant] was consummated during the [plaintiff's] telephone call from Connecticut to the [defendant] in New York." The plaintiff moved to correct the finding to read that the contract "was formed and consummated" during the telephone call. The commissioner granted the motion as to this claimed correction.

between Connecticut and the employment contract. On the basis of these conclusions, the commissioner held that Connecticut law did not apply to the plaintiff's claim and that the workers' compensation commission, therefore, lacked jurisdiction to award compensation benefits to the claimant. Following a motion to correct filed by the plaintiff, which the commissioner denied in part and granted in part, the plaintiff appealed to the board, which affirmed the decision of the commissioner. The plaintiff then appealed to this court.

The plaintiff's principal claim on appeal is that the board improperly affirmed the decision of the commissioner that Connecticut law did not apply to the plaintiff's claim for workers' compensation benefits.[4] He maintains that under our Supreme Court's holding in *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 31, Connecticut law may be applied to his benefits claim because the state had a significant relationship to his employment contract with the defendant. We agree.

We begin by setting forth the following standard of review and principles of law that underlie the plaintiff's claim. "The purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . The Workers' Compensation Act [General Statutes § 31-275 et seq.] compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citation omitted; internal quotation marks

[4] The plaintiff also claims that the board improperly affirmed the commissioner's decision denying a portion of the plaintiff's motion to correct concerning the plaintiff's claim that the defendant was, in fact, a Connecticut employer at the time the plaintiff and the defendant entered into the employment contract. Because our resolution of the plaintiff's principal claim is dispositive of his appeal, we do not address this second claim.

omitted.) *Panaro* v. *Electrolux Corp.*, 208 Conn. 589, 598–99, 545 A.2d 1086 (1988). The act "indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation." (Citations omitted; internal quotation marks omitted.) *Blakeslee* v. *Platt Bros. & Co.*, 279 Conn. 239, 245, 902 A.2d 620 (2006). Further, our Supreme Court has recognized that the state of Connecticut "has an interest in compensating injured employees to the fullest extent possible . . . ." (Internal quotation marks omitted.) *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 37, quoting *McGowan* v. *General Dynamics Corp.*, 15 Conn. App. 615, 622, 546 A.2d 893 (1988), aff'd, 210 Conn. 580, 556 A.2d 587 (1989).

"[W]hen a decision of a commissioner is appealed to the . . . [board], the . . . [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . It is the power and the duty of the commissioner, as the trier of fact, to determine the facts. . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [T]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Mele* v. *Hartford*, 118 Conn. App. 104, 107–108, 983 A.2d 277 (2009).

In *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 588 A.2d 194 (1991), the Supreme Court considered

whether Connecticut law would apply to a claim for benefits by a resident of another state working for an out-of-state corporation. The plaintiff in *Cleveland*, a resident of New Jersey, was injured in the course of his employment in Connecticut, where he spent 35 to 40 percent of his employment time for the named defendant, a New Jersey corporation. Id., 182–83. After successfully applying for workers' compensation benefits in New Jersey, the plaintiff filed a claim for benefits in Connecticut. Id., 182. The commissioner ordered the defendant to accept liability for the plaintiff's injury, concluding that the latter had "enough significant contacts with this state and . . . therefore Connecticut [had] an interest in applying its statutes for the protection of working men injured within its borders." (Internal quotation marks omitted.) Id., 183. The board and this court affirmed the decision of the commissioner. Id.

On appeal, our Supreme Court first clarified that "the question of whether one state will award supplemental workers' compensation benefits to a claimant who previously received benefits under the laws of another state is more appropriately deemed a question of conflict of laws" than a matter of subject matter jurisdiction. Id., 187. Noting this state's "interest in compensating injured employees to the fullest extent possible"; (internal quotation marks omitted) id., 194; the court stated that "[r]egardless of where an employee first seeks an award of benefits, he or she is entitled to the maximum amount allowed to an individual under either comprehensive legislative scheme." (Internal quotation marks omitted.) Id. Applying a conflict of laws analysis, the court held that "[t]he remedial purpose of our Workers' Compensation Act supports application of its provisions in cases [in which] an injured employee seeks an award of benefits and Connecticut is the place of the injury, the place of the employment contract or the place of the employment relation." Id., 195. Our

Supreme Court affirmed the judgment of this court, concluding that because the plaintiff had sustained an employment related injury in this state, it was appropriate to apply Connecticut law to his claim for benefits. Id.

Our Supreme Court in *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 31, revisited and clarified the test set forth in *Cleveland* for determining whether application of Connecticut law to a claim for workers' compensation benefits is appropriate. The plaintiff in *Burse* resided in Connecticut and was employed as an airline pilot by the named defendant, a freight carrier based in Michigan. Id., 33. The defendant had minimal business contacts with Connecticut, and the plaintiff's employment duties took place in the state infrequently. Id., 39–40. After his work-related injury during a flight over the Midwest, the plaintiff filed for workers' compensation benefits in Connecticut. Id., 34. Determining that Connecticut was both the place of the plaintiff's employment and the place of the employment contract, the commissioner concluded that the plaintiff was entitled to benefits. Id., 35. The board affirmed the decision of the commissioner. Id.

Our Supreme Court reversed the decision of the board on appeal. Id., 45. Prior to addressing the merits of the defendant's claims, the court reviewed the test set forth in *Cleveland* and clarified that a claimant seeking workers' compensation benefits in this state must make, "at a minimum, a showing of a *significant* relationship between Connecticut and either the employment contract or the employment relationship." (Emphasis in original.) Id., 38–39. With regard to the relationship between the plaintiff and the defendant, the court concluded that there was insufficient record evidence to support the commissioner's conclusion that Connecticut was the place of the employment relationship. Id., 39–40.

In the present case, there is no claim that Connecticut was the place of the employment relationship between the plaintiff and the defendant. Rather, the plaintiff claims that the circumstances surrounding the formation of his employment contract with the defendant were sufficient under *Burse* to warrant application of Connecticut law to his claim for workers' compensation benefits. We, therefore, must examine closely the *Burse* court's discussion and holding applying the place of the employment contract prong of the test.

In *Burse*, the plaintiff received a telephone call at his home in Connecticut from the defendant's chief pilot asking him to fly to Michigan to meet with the defendant's representatives about a position of employment. Id., 41. The plaintiff testified that he believed that he actually had been offered employment during the telephone conversation and that the purpose of the flight to Michigan merely was to allow the defendant to confirm his credentials. Id. The plaintiff flew to Michigan and met with the defendant's director of operations to whom the plaintiff presented his pilot credentials and discussed compensation and benefits. Id. No employment papers were signed either prior to or after this meeting. Id. The plaintiff testified that the defendant later withdrew the offer of employment because it anticipated losing the airplane intended for the plaintiff. Id. The defendant again called the plaintiff in Connecticut approximately one week later. Id. The plaintiff's wife answered the call because the plaintiff at the time was in Michigan training with a different air cargo company. Id., 41–42. She subsequently contacted the plaintiff, informing him that the defendant wanted to see him. Id., 42. The plaintiff testified that he met again with the defendant's representatives in Michigan and that during this meeting he officially became an employee of the defendant. Id. The commissioner concluded that the plaintiff was hired during the initial telephone call he

had received from the defendant and that, therefore, Connecticut was the place of the employment contract. Id., 41. The board on appeal noted the inconsistencies in the plaintiff's testimony but concluded that they were explained by the fact that the testimony concerning the meetings in Michigan referred only to formalization of the contract. Id.

In analyzing whether Connecticut was the place of the employment contract, the *Burse* court acknowledged that a contract had been formed between the plaintiff and the defendant but stated that its "concern is with *when and where* the contract was formed." (Emphasis in original.) Id., 42. The plaintiff's testimony that he believed a contract was formed during his initial telephone call with the defendant, according to the court, was undermined expressly by his later testimony that the offer had been withdrawn. Id., 43. The court concluded that the meetings between the plaintiff and the defendant in Michigan did not pertain to formalization but, rather, to formation of the contract. Id., 44. The court stated: "Because the pertinent employment contract was not formed during [the defendant's] first telephone call to the plaintiff in Connecticut, we conclude that the . . . board improperly determined that the commissioner's conclusion that Connecticut was the place of the employment contract was supported by evidence in the record. The relevant employment contract was not formed in Connecticut; therefore, Connecticut cannot have a significant relationship to that contract." Id., 44–45.

We initially consider whether, in the present case, the contract between the plaintiff and the defendant was formed in Connecticut. The commissioner did not make a finding as to the *place* the contract was formed. However, he did find that during the telephone call between the parties, the defendant, in New York,

offered to the plaintiff, who was in Connecticut, a position of employment, which offer the plaintiff accepted. Professor Corbin, in discussing telephonic communications of offers and acceptances, states that in such instances, the place of the contract "has been held to be the place at which the offeree speaks the words of acceptance into the telephone transmitter." 1 A. Corbin, Contracts (Rev. Ed. 1993) § 3.25, p. 447. See also 1 Restatement (Second), Contracts § 64, comment (c), p. 158 (1981) (noting in cases where contract is made by telephone "the contract is created at the place where the acceptor speaks or otherwise completes his manifestation of assent"). Applying this principle to the present case, we conclude that the employment contract was formed in Connecticut, as the plaintiff expressed his words of acceptance here.

The commissioner, considering the record evidence adduced by the parties, concluded that the plaintiff did not meet his burden of demonstrating that there was a "substantial" relationship between Connecticut and the employment contract between the plaintiff and the defendant. The commissioner concluded that the plaintiff "did not commence his employment with the [defendant] and did not begin to earn wages until he arrived at the [defendant's] facility in New York and employment paperwork was completed." However, the commissioner also found that "[a]n employment contract between the [plaintiff] and the [defendant] was formed and consummated during the [plaintiff's] telephone call from Connecticut to the [defendant] in New York." These findings of fact by the commissioner, along with his finding that the plaintiff at all relevant times was a resident of Connecticut, are not disputed, and we do not disturb them on appeal. However, the commissioner's conclusion that there was no significant relationship between Connecticut and the contract was a conclusion of law over which our review is plenary. Applying the

rule clarified by our Supreme Court in *Burse,* we conclude that the commissioner's conclusion of law was incorrect. We hold that the formation of the employment contract in Connecticut, between the plaintiff resident of this state and the defendant out-of-state employer, provided a sufficient basis for application of this state's law to the plaintiff's claim for workers' compensation benefits. The *Burse* court noted that in analyzing whether this state was the place of the contract, the court's "concern is with *when and where* the contract was formed." (Emphasis in original.) *Burse* v. *American International Airways, Inc.,* supra, 262 Conn. 42. Absent from the opinion in *Burse* is any discussion concerning commencement of the plaintiff's employment or when the plaintiff began to earn wages. Here, the commissioner's findings demonstrate that the contract was formed during the telephone conversation between the plaintiff, who was in Connecticut, and the defendant in New York.

In the recent case of *Jaiguay* v. *Vasquez,* 287 Conn. 323, 331, 948 A.2d 955 (2008), our Supreme Court delineated and compared the proper conflicts analysis for two types of claims arising in the workers' compensation context: those involving a claimant who has been awarded compensation benefits and seeks damages in tort under an exception to the exclusivity provisions of the workers' compensation act and those seeking workers' compensation benefits alone. As to tort claims, the court clarified that the appropriate choice of law approach is the "most significant relationship test" of the Restatement (Second) of Conflict of Laws, §§ 6 and 145. *Jaiguay* v. *Vasquez,* supra, 347–51. This analysis is fitting because "the choice of law question [in such cases] is not which state among one or more other states has a *sufficient* interest in having its statutes invoked for the benefit of the employee. The issue, rather, is which state's law, to the *exclusion* of the law

of all other potentially interested states, is the governing or controlling law." (Emphasis in original.) Id., 347. As to the second category of claims, those seeking workers' compensation benefits in this state, the court, after reviewing its relevant prior opinions including *Cleveland* and *Burse*, stated that "the choice of law question posed by a claim for workers' compensation benefits in this state is not whether Connecticut has the *most* significant relationship to or interest in the matter but, rather, whether Connecticut's relationship or interest is *sufficiently* significant to warrant an award of benefits under its workers' compensation statutes." (Emphasis in original.) Id., 346. In the present case, the plaintiff's claim was for workers' compensation benefits under our state's law and not a claim sounding in tort. Therefore, the plaintiff's burden was to demonstrate a significant relationship between Connecticut and the employment contract between the plaintiff and the defendant, not that this state had the most significant relationship to the contract. Applying the foregoing precedent, particularly that of *Burse*, to the facts of this case, we conclude that this state's relationship to the employment contract, Connecticut being both the place of the plaintiff's residence and the place of the contract's formation, was sufficiently significant such that Connecticut law may be applied to the plaintiff's claim for workers' compensation benefits.

The decision of the compensation review board is reversed and the case is remanded to the board with direction to reverse the commissioner's decision, and to remand the case to the commissioner for further proceedings according to law.

In this opinion the other judges concurred.